Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| STRONG FITNESS CENTER, INC.<br><br>*Recurrido*<br><br>v.<br><br>LUIS ROBERTO VÁZQUEZ Y OTROS<br><br>*Peticionario* | TA2026CE00373 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CD2019CV00182<br><br>Sobre: Compraventa y otros |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de mayo de 2026.

Comparece ante nos el señor Luis Roberto Vázquez (señor Vázquez o peticionario) mediante recurso de *Certiorari* y solicita que revoquemos la *Orden*[1] emitida y notificada el 5 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Urgente Moción de Reconsideración Sin Someterse a la Jurisdicción*[2] referente a una *Orden*[3] en la cual el TPI declaró *No Ha Lugar* la solicitud de relevo de sentencia presentada por el peticionario.

Por los fundamentos que expondremos a continuación, **expedimos** el recurso de epígrafe y **revocamos** la *Orden* recurrida.

**I.**

El caso de autos tuvo su génesis el 29 de mayo de 2019, cuando Strong Fitness Center, Inc. (Strong Fitness o recurrido), por conducto de su presidente, Ángel Arnaldo Garced Salgado (señor

---

[1] Apéndice 159 del recurso de *Certiorari.*
[2] Apéndice 156 del recurso de *Certiorari.*
[3] Apéndice 153 del recurso de *Certiorari.*

Garced Salgado), instó una *Demanda*[4] de daños y perjuicios y saneamiento por contrato de compraventa en contra del señor Vázquez, su esposa, la sociedad legal de bienes gananciales, Oriental Bank y una aseguradora desconocida. En vista de lo anterior, el 31 de mayo de 2019, Strong Fitness presentó una *Moción Sometiendo Emplazamientos*[5], por lo que, el 3 de junio de 2019, el TPI expidió los emplazamientos solicitados[6]. Tras no poder emplazar personalmente al señor Vázquez, el 3 de septiembre de 2019, el recurrido sometió una *Moción Solicitando Emplazamiento por Edicto*[7]. La misma estuvo acompañada de una *Declaración Jurada*[8] suscrita por la emplazadora Aida L. Dávila Nieves (emplazadora Dávila Nieves), en la cual esbozó lo siguiente:

> 1. Que el día 6 de junio de 2019, recibí los emplazamientos para ser diligenciados a nombre de Luis Roberto [Vázquez], con dirección en, Carretera 173, KM. 9.0, BO. Sud Rabanal, BO. Palmasola, Cidra, P.R.[9].

> 2. Que el día 7 de julio de 2019 visite la dirección de referencia, allí me encontré con el negocio Crazy Horse, allí me atendió una empleada rubia esta no se quiso identificar pero que al preguntarle por el demandado me informó que no se encontraba, que no lo había visto, me informó que el demandado no tenía celular, pregunté que vehículo tenía, me informó que varios, me quedé en el estacionamiento [por] 2 horas esperando [a ver] si había [algún] movimiento, entonces entré y volví a preguntar a otra empleada de pelo negro y me dijo lo mismo, me informó que le preguntara a un caballero que se encontraba detrás del negocio lavando autos de nombre Don Chily, le pregunté y éste me informó que el demandado tiene un Jeep color vino, que no tiene celular y que no podía dar más información, opté por estacionarme en el lado opuesto de la carretera y llamé al Sr. Ángel Garced, demandante del caso y le expliqué lo que estaba sucediendo me dijo que diera la vuelta por la Farmacia Coop. en el pueblo a ver si estaba el Jeep, así lo [hice] me bajé y pregunté por el demandado, pero me informaron que no lo habían visto, volví a llamar al Sr. Garced, me indicó que me quedara en el negocio ya que él iba a llamar a un amigo para que le diera información de donde vivía el demandado, espere 2 horas y volví a llamarlo y me informó que su amigo no sabía, espere hasta las 6 de la tarde y me marché.

---

[4] Apéndice 1 del recurso de *Certiorari.*
[5] Apéndice 2 del recurso de *Certiorari.*
[6] Apéndice 3 del recurso de *Certiorari.*
[7] Apéndice 15 del recurso de *Certiorari.*
[8] *Íd.*, Anejo *Declaración Jurada.*
[9] Dicha dirección no es la misma a la cual la emplazadora Dávila Nieves se personó. Como bien se detalla en la *Declaración Jurada*, la emplazadora Dávila Nieves solo se presentó en el negocio Crazy Horse.

[3.] Que los días 9, 12, 15, 20 y 29 del mes de junio de 2019 estuve visitando el negocio Crazy Horse y preguntando por el [demandado] pero este nunca se encontraba.

[4.] Que el día 4 de julio de 2019 volví a visitar el negocio [esta] vez me atendió un joven quien dijo [llamarse] Luisito, este dijo ser el hijo del demandado, solo le pregunté qué día o a cuál hora podía ver a su padre para hablar de un negocio y me informó que no sabía cuál era su horario, le dejé mi número de teléfono, pero me informó que su padre no tiene teléfono, ni el negocio tampoco.

[5.] Que el día 14 de julio volví a visitar el negocio del demandado esta vez pude hablar con un caballero que tenía un carrito de verduras cerca al preguntarle por el demandado éste me informó que el demandado es una persona muy problemática y [escurridiza], dijo que hacían varios días que no lo veía por el lugar.

[6.] Que lo días 20, 26 y 30 del mes de julio de 2019 estuve visitando el negocio y preguntando por el demandado pero siempre me informaban que no se encontraba.

[7.] Que el día 9 de agosto de 2019 visité por última vez el negocio del demandado y me volvió a atender la empleada rubia quien me informó que este se encontraba fuera del país.

[8.] Que ese mismo día visité el cuartel de policía del pueblo de Cidra, y allí le pregunté al Agente Rodríguez, placa #30472 si conocía al demandado a lo que contestó que no.

[9.] Que ese mismo día visité la alcaldía del pueblo de Cidra y allí le pregunté a la Sra. Pérez si conocía al demandado a lo que me contestó que no.

[10.] Que ese mismo día visité el correo del pueblo de Cidra y allí le pregunté al Sr. Rivera si conocía al demandado a lo que contestó que no.

[11.] Que llamé al 411 para ver si conseguía alguna información del demandado, allí me atendió el Sr. Encarnación quien me informó que no tiene ningún número de teléfono registrado a nombre del demandado.

[12.] Que para tratar de conseguir más información del demandado busqué en las páginas de internet y Facebook, pero no aparece ninguna información de éste.

[13.] Que al mejor entender de la declarante la parte demandante tiene una causa de acción [meritoria] contra la parte demandada.

El 9 de octubre de 2019[10], el foro recurrido emitió una *Orden*[11] en la cual autorizó y expidió el emplazamiento por edicto del peticionario. Asimismo, ordenó:

[q]ue dentro de los diez días siguientes a la publicación del edicto se dirija al demandado, por correo certificado y con acuse de recibo, una copia de la demanda presentada y del emplazamiento, a su última dirección conocida en:

---

[10] Notificada el 10 de octubre de 2019.
[11] Apéndice 23 y 24 del recurso de *Certiorari.*

FÍSICA
Carr. 173, Km. 9.0 Interior Barrio Sud Rabanal Sector Palmasola, Cidra, Puerto Rico
POSTAL
PO Box 385 Cidra, PR 00739[12].

Expedido el emplazamiento por edicto del señor Vázquez[13], el 26 de noviembre de 2019, el recurrido presentó una *Moción Informando Publicación de Edicto y Envío por Correo Certificado a los Demandados*[14]. Esta estuvo acompañada del *Edicto*[15] del cual surgió que la dirección del peticionario era Carr. 173, Km. 9.0 Interior Barrio Sud Rabanal Sector Palmasola, Cidra, Puerto Rico. De igual forma, anejó copia de un recibo del Servicio Postal de los Estados Unidos (por sus siglas en inglés, USPS) con la dirección PO BOX 385 Cidra, PR, 00739. No obstante, el recibo no estaba ponchado por USPS[16].

Transcurrido algún tiempo, el 6 de septiembre de 2023[17], el TPI emitió una *Sentencia Parcial*[18] en la cual desestimó la acción en contra de Oriental Bank y señaló vista en rebeldía en contra del señor Vázquez para el 2 de febrero de 2024. Tras un reseñalamiento, la vista se celebró el 4 de abril de 2024, en la cual solamente compareció Strong Fitness y el ingeniero Enrique Santiago Arroyo (Ing. Santiago Arroyo)[19]. En la vista, el recurrido presentó prueba testifical mediante los testimonios bajo juramento del señor Garced Salgado y del Ing. Santiago Arroyo[20]. Asimismo, presentó prueba documental identificada como Exhibit 1, la cual consistió en una "Relación de Gastos" fechada el 14 de marzo de 2024 y preparada

---

[12] *Íd.*
[13] Apéndice 24 del recurso de *Certiorari*, pág. 3.
[14] Apéndice 33 del recurso de *Certiorari*.
[15] *Íd.*, Anejo *Edicto*.
[16] *Íd.*, Anejo *Correo Certificado*.
[17] Notificada el 12 de septiembre de 2023.
[18] Apéndice 124 del recurso de *Certiorari*.
[19] Apéndice 139 del recurso de *Certiorari*.
[20] *Íd.*

por el Ing. Santiago Arroyo[21]. Así pues, allí se hizo constar que el peticionario tenía anotada la rebeldía[22].

El 18 de septiembre de 2024, mediante una *Comparecencia Especial*[23] el señor Vázquez solicitó que se desestimara la *Demanda* en su contra por falta de jurisdicción sobre su persona, por diligenciamiento insuficiente de los emplazamientos. Evaluada tal solicitud, el 6 de febrero de 2025[24], el TPI emitió una *Orden*[25] en la cual declaró *No Ha Lugar* el petitorio del peticionario.

El 17 de diciembre de 2025[26], el foro recurrido emitió una *Sentencia Final*[27] en la cual declaró *Ha Lugar* la *Demanda* y le ordenó al señor Vázquez a pagar ciento cinco mil novecientos treinta dólares ($105,930.00) por concepto de gastos incurridos por el recurrido y veinte mil dólares ($20,000.00) por concepto de daños morales y angustias mentales.

Así las cosas, el 5 de enero de 2026, el peticionario presentó una *Moción en Solicitud de Relevo y Nulidad de Sentencia por Falta de Jurisdicción Sobre la Persona del Demandado Vázquez y por Falta de Legitimación Activa de la Demandante; Falta de Parte Indispensable; Solicitud de Reconsideración y Otros Extremos*[28]. Allí adujo que el dictamen adolecía de nulidad por falta de jurisdicción sobre la persona. Esto, debido a los defectos en el diligenciamiento del emplazamiento y la falta de notificación y envío por correo certificado con acuse de recibo de la *Demanda* y del emplazamiento, a una dirección errónea y por falta de parte indispensable. Por ello, solicitó que se levantara la rebeldía, se abriera el descubrimiento de prueba y se ordenara la continuación de los procesos con las

---

[21] *Íd.*
[22] *Íd.*
[23] Entrada núm. 146 del expediente del Tribunal de Primera Instancia (TPI).
[24] Notificada el 7 de febrero de 2025.
[25] Entrada núm. 147 del expediente del TPI.
[26] Notificada el 18 de diciembre de 2025.
[27] Apéndice 148 del recurso de *Certiorari*.
[28] Apéndice 149 del recurso de *Certiorari*.

garantías de un debido proceso de ley. En la alternativa, solicitó que se reconsiderara la *Sentencia Final* debido a la falta de nexo causal.

Por su parte, el 30 de enero de 2026, Strong Fitness se opuso al relevo de sentencia y arguyó que los emplazamientos por edicto fueron autorizados y diligenciados conforme a derecho. Además, hizo constar que el señor Vázquez ya había impugnado previamente el emplazamiento mediante *Comparecencia Especial*, la cual fue declarada *No Ha Lugar* mediante una *Orden* notificada el 7 de febrero de 2025, la cual advino final y firme al no ser reconsiderada ni apelada oportunamente, la solicitud de relevo constituía un ataque colateral improcedente contra una determinación final y firme. Asimismo, el recurrido sostuvo que el peticionario tenía conocimiento previo de la existencia del pleito y que su planteamiento sobre defectos en las direcciones o en el envío por correo certificado era frívolo y temerario.

Evaluadas las posiciones de las partes, el 2 de febrero de 2026[29], el foro recurrido emitió una *Orden* en la cual declaró *No Ha Lugar* la solicitud de relevo de sentencia presentada por el señor Vázquez. Inconforme con tal determinación, el 18 de febrero de 2026, el peticionario presentó una *Urgente Moción de Reconsideración Sin Someterse a la Jurisdicción*. La misma estuvo acompañada de un *Juramento*[30] en el cual el peticionario hizo constar que no había recibido copia de la *Demanda* y del emplazamiento. De igual forma, presentó juramentos de Héctor Manuel Cruz Carrasquillo y Edgardo Vélez Ríos, los cuales constataron que lo conocían y que era una persona accesible[31]. Sin embargo, el 5 de marzo de 2026, el TPI denegó la reconsideración[32].

---

[29] Notificada el 4 de febrero de 2026.
[30] Apéndice 156 del recurso de *Certiorari, Anejo 1.*
[31] *Íd., Anejo 6 y 7.*
[32] Apéndice 159 del recurso de *Certiorari, Orden.*

Insatisfecho aun, el 27 de marzo de 2026, el señor Vázquez acudió ante este foro intermedio y le imputó al foro recurrido el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE RELEVO Y NULIDAD DE SENTENCIA, Y AL NEGARSE A DEJAR SIN EFECTO LA SENTENCIA FINAL NOTIFICADA EL 18 DE DICIEMBRE DE 2025, A PESAR DE QUE NUNCA ADQUIRIÓ JURISDICCIÓN SOBRE LA PERSONA DEL SR. LUIS ROBERTO VÁZQUEZ, PUES LA DECLARACIÓN JURADA SOMETIDA PARA JUSTIFICAR EL EMPLAZAMIENTO POR EDICTO FUE INSUFICIENTE, Y EL POSTERIOR DILIGENCIAMIENTO DEL EDICTO INCUMPLIÓ LOS REQUISITOS DE ENVÍO, PUBLICACIÓN Y PRUEBA EXIGIDOS POR LAS REGLAS 4.6 Y 4.7 DE PROCEDIMIENTO CIVIL Y POR EL DEBIDO PROCESO DE LEY.

El 15 de abril de 2026, emitimos y notificamos una *Resolución* concediéndole al recurrido hasta el 20 de abril de 2026 para que se expresara en cuanto al recurso presentado. Luego de concederle una prórroga[33], el 24 de abril de 2026, Strong Fitness sometió su *Alegato en Oposición a Expedición del Recurso de Certiorari*. Allí, alegó que la *Declaración Jurada* suscrita por la señora Dávila Nieves detallaba las gestiones realizadas para notificar al peticionario. De igual manera, arguyó que el señor Vázquez estuvo evitando comparecer al pleito, pues tuvo la oportunidad de ejercer sus derechos en la vista en rebeldía y tampoco lo hizo.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[34]. La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada

---

[33] Véase, entrada núm. 7 y 8 del Tribunal de Apelaciones (TA).

[34] Véase, *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).

dentro de la discreción judicial[35]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[36]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[37].

La Regla 40 del Reglamento del Tribunal de Apelaciones[38], establece los criterios que este foro debe tomar en consideración al entender o no en los méritos los asuntos planteados mediante un recurso de *certiorari.* La aludida regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

En lo pertinente a este caso, el *certiorari* también es el recurso apropiado para solicitar la revisión de determinaciones

---

[35] *Íd.*
[36] *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2014); *Negrón v. Srio. De Justicia,* 154 DPR 79, 91 (2001).
[37] *Íd.*
[38] 4 LPRA XXII-B, R. 40.

postsentencia[39]. A esos efectos, el Tribunal Supremo expresó que:

> Las resoluciones atinentes a asuntos postsentencia no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia[40].

**-B-**

El emplazamiento constituye "el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial" dentro de nuestro sistema judicial[41]. Por un lado, la finalidad del emplazamiento es notificar a la parte demandada que se ha instado una reclamación judicial en su contra y, por el otro, garantizarle su derecho a ser oído y a defenderse[42]. De otra parte, sirve como medio para que los tribunales adquieran jurisdicción sobre la persona del demandado, de forma tal que éste quede obligado por el dictamen que finalmente se emita[43].

El adecuado diligenciamiento del emplazamiento constituye un imperativo constitucional del debido proceso de ley, por lo que se exige un cumplimiento estricto cuando de obedecer sus requisitos se trata[44].

Aunque el diligenciamiento personal del emplazamiento es el método más idóneo para adquirir jurisdicción sobre la persona, por vía de excepción, las Reglas de Procedimiento Civil autorizan emplazar por edicto[45]. **Así, cuando la persona a ser emplazada,**

---

[39] *IG Builders et al. v. BBVAPR, supra*, pág. 339.
[40] *Íd.*
[41] *Acosta v. ABC, Inc.*, 142 DPR 927, 931 (1997); *Reyes v. Oriental Fed. Savs. Bank*, 133 DPR 15, 22 (1993); *Pagán v. Rivera Burgos*, 113 DPR 750, 754 (1983).
[42] *Banco Popular v. S.L.G. Negrón*, 164 DPR 855, 863 (2005); *Datiz v. Hospital Episcopal*, 163 DPR 10, 15 (2004); *Bco. Central Corp. v. Capitol Plaza, Inc.*, 135 DPR 760, 763 (1994).
[43] *Banco Popular v. S.L.G. Negrón, supra*; *Márquez v. Barreto*, 143 DPR 137, 142 (1997).
[44] *Banco Popular v. S.L.G. Negrón, supra*; *Datiz v. Hospital Episcopal*, supra; *Chase Manhattan Bank v. Polanco Martínez*, 131 DPR 530 (1992); *Rodríguez v. Nasrallah*, 118 DPR 93 (1986).
[45] *Banco Popular v. S.L.G. Negrón, supra*, pág. 865.

**estando en Puerto Rico, no pueda ser localizada después de realizadas las diligencias pertinentes, procede que su emplazamiento se realice a través de la publicación de un edicto[46].** (Énfasis nuestro).

Cónsono con lo anterior, la Regla 4.6 de Procedimiento Civil[47], dispone sobre el emplazamiento por edictos y su publicación como sigue:

(a) Cuando la persona a ser emplazada esté fuera de Puerto Rico, o que estando en Puerto Rico no pudo ser localizada después de realizadas las diligencias pertinentes o se oculte para no ser emplazada, o si es una corporación extranjera sin agente residente y así se comprueba a satisfacción del tribunal mediante declaración jurada que exprese dichas diligencias, y aparezca también de dicha declaración o de la demanda presentada que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, **el tribunal podrá dictar una orden para disponer que el emplazamiento se haga por un edicto**. No se requerirá un diligenciamiento negativo como condición para dictar la orden que disponga que el emplazamiento se haga por edicto. (Énfasis nuestro)

(b) El contenido del edicto tendrá la información siguiente:
(1) Título—Emplazamiento por Edicto
(2) Sala del Tribunal de Primera Instancia
(3) Número del caso
(4) Nombre de la parte demandante
(5) Nombre de la parte demandada a emplazarse
(6) Naturaleza del pleito
(7) Nombre, dirección y número de teléfono del abogado o abogada de la parte demandante
(8) Nombre de la persona que expidió el edicto
(9) Fecha de expedición
(10) Término dentro del cual la persona así emplazada deberá contestar la demanda, según se dispone en la Regla 10.1, y la advertencia a los efectos de que si no contesta la demanda presentando el original de la contestación ante el tribunal correspondiente, con copia a la parte demandante, se le anotará la rebeldía y se dictará sentencia para conceder el remedio solicitado sin más citarle ni oírle. El edicto identificará con letra negrilla tamaño diez (10) puntos toda primera mención de persona natural o jurídica que se mencione en éste. Si la demanda es enmendada en cualquier fecha anterior a la de la comparecencia de la parte demandada que haya sido emplazada por edictos, dicha demanda enmendada deberá serle notificada en la forma dispuesta por la regla de emplazamiento aplicable al caso.

[…]

---

[46] *Id.*
[47] 32 LPRA Ap. V, R.4.6.

Del estatuto anterior se desprende que los requisitos para autorizar un emplazamiento por edicto se circunscriben a que se acredite al Tribunal mediante declaración jurada las diligencias para emplazar al demandado, quien no ha podido ser emplazado por alguna de las causas que contempla el ordenamiento procesal civil y que aparezca también de la declaración o de la demanda presentada que existe una reclamación que justifica la concesión de un remedio. El Tribunal Supremo ha expresado que en caso de que la parte demandante presente una declaración jurada al tribunal -a fin de justificar el emplazamiento por edicto- ésta tiene que detallar todas las gestiones hechas para emplazar al demandado y su contenido tiene que ser suficiente en Derecho para inspirar el convencimiento judicial necesario[48].

En cuanto a la prueba del diligenciamiento del emplazamiento, la Regla 4.7 de Procedimiento Civil dispone que:

> Regla 4.7. Prueba del diligenciamiento
> La persona que diligencie el emplazamiento presentará en el Tribunal la constancia de haberlo hecho dentro del plazo concedido a la persona emplazada para comparecer. Si el diligenciamiento lo realizó un alguacil o alguacila, su prueba consistirá en su declaración jurada. **En caso de que la notificación del emplazamiento se haga por edictos, se probará su publicación mediante la declaración jurada del (de la) administrador(a) o agente autorizado(a) del periódico, acompañada de un ejemplar del edicto publicado y de un escrito del abogado o abogada que certifique que se depositó en el correo una copia del emplazamiento y de la demanda.** En los casos de emplazamiento comprendidos en la Regla 4.3 (b)(2) y (5) se acreditará el diligenciamiento mediante una declaración jurada que establezca el cumplimiento con todos los requisitos establecidos o por la orden del juez o jueza. En el caso comprendido en la Regla 4.6, se presentará el acuse de recibo de la parte demandada. La omisión de presentar prueba del diligenciamiento no surtirá efectos en cuanto a su validez. La admisión de la parte demandada de que ha sido emplazada, su renuncia del diligenciamiento del emplazamiento o su comparecencia hará innecesaria tal prueba[49]. (Énfasis nuestro).

---

[48] *Global v. Salaam*, 164 DPR 474 (2005).
[49] 32 LPRA Ap. V, R. 4.7.

De las reglas antes referidas surge que los requisitos más importantes del emplazamiento por edictos son: (1) la declaración jurada en la que se expresen las diligencias efectuadas para localizar a la persona a ser emplazada; (2) la publicación o diligenciamiento del emplazamiento por edicto dentro de los ciento veinte (120) días luego de ser expedido; y (3) que se le envió a la parte demandada por correo certificado, a su última dirección conocida, dentro de los diez (10) días siguientes a la publicación del edicto, copia de la demanda y del emplazamiento[50].

**-C-**

La Regla 49.2 de Procedimiento Civil[51], establece el mecanismo procesal disponible para solicitar al foro primario el relevo de los efectos de una sentencia en caso de que exista alguno de los fundamentos establecidos en la misma regla. Se trata de un mecanismo post sentencia creado con el objetivo de impedir que sofisticaciones y tecnicismos, puedan privar los fines de la justicia[52]. La referida Regla dispone específicamente, como sigue:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) Error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48 de este apéndice;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
>
> (d) nulidad de la sentencia;
>
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

---

[50] *Banco Popular v. S.L.G. Negrón, supra.*
[51] 32 LPRA Ap. V, R. 49.2
[52] *García Colón et al v. Sucn. González*, 178 DPR 527, 539 (2010); *Náter Cardona v. Ramos Muñiz*, 162 DPR 616, 624, (2004).

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

[...]

El precepto procesal de relevo de sentencia tiene el fin de establecer un justo balance entre dos principios de cardinal importancia en nuestro ordenamiento jurídico. Al ponderar la procedencia de una moción de relevo de sentencia, el tribunal debe hacer un balance entre los intereses en conflicto. Por un lado, está el derecho a que toda litigación sea concluida y, por el otro, el derecho a que en todo caso se haga justicia. Independientemente de la existencia de alguno de los fundamentos establecidos en la regla citada, el relevo de sentencia es una decisión discrecional del tribunal. Únicamente está privado de ejercer su discreción en los casos de nulidad o cuando la sentencia ha sido satisfecha. No basta con demostrar la existencia de alguno de los fundamentos contemplados en la Regla 49.2, *supra.* Además, es necesario convencer al tribunal para que ejerza su discreción y conceda el remedio.

Sin embargo, como excepción, nuestro más alto foro ha dictado que "[u]na interpretación liberal de la Regla 49.2 permite considerar una moción de reconsideración como una de relevo de sentencia, aun después de haber transcurrido el término para considerar la reconsideración o aun después de haber advenido final y firme la sentencia, cuando dicha moción cumple con los requisitos establecidos en dicha regla"[53]. Esto significa que "una parte puede librarse de los efectos de una sentencia si logra demostrar la existencia de, al menos, una de las seis causales estipuladas en la regla"[54]. Es decir, el Tribunal de Primera Instancia tiene "discreción

---

[53] *Pagán Navedo y Otros v. Hon. Edwin Rivera* Sierra, 143 DPR 314, 328 (1997); *Reyes v. ELA*, 155 DPR 799 (2001).
[54] *De Jesús Viñas v. González Lugo*, 170 DPR 499, 513 (2007).

para considerar la moción [de reconsideración] presentada como una de relevo de sentencia, si esta calific[a] como tal"[55].

Cuando el tribunal examina una solicitud de relevo de sentencia, tiene que considerar ciertos criterios a fin de salvaguardar los derechos de las partes envueltas en el litigio. El juez de instancia deberá estar atento a la existencia de una defensa válida que oponer a la reclamación del peticionario, el tiempo que media entre la sentencia y la solicitud de relevo, el perjuicio que sufriría la parte contraria si se concede el relevo de sentencia y el perjuicio que sufriría la parte promovente de no ser concedido el remedio solicitado[56].

Además, el tribunal debe determinar si bajo las circunstancias específicas del caso existen razones que justifiquen el relevo de la sentencia. Si la parte que solicita el relevo aduce una buena defensa, además de alguna de las circunstancias previstas en la Regla 49.2 y el relevo no ocasiona perjuicio alguno a la parte contraria, la balanza debe ser inclinada a favor de la reapertura[57].

La moción de relevo de sentencia debe presentarse dentro de un término razonable que no excede los seis meses establecidos en la Regla 49.2*, supra.* Cuando la solicitud de relevo está basada en fraude entre las partes tiene que ser presentada dentro del término de seis meses de haberse registrado la sentencia. Sin embargo, ese plazo es inaplicable cuando se trata de una sentencia nula por fraude al tribunal, en cuyo caso, incluso puede presentarse un pleito independiente[58].

Una sentencia es nula si ha sido dictada sin jurisdicción o cuando al dictarla se ha quebrantado el debido proceso de ley. Es decir, una sentencia "es nula cuando el tribunal ha actuado de una

---

[55] *Íd.,* pág. 508; *Reyes v. ELA, supra.*

[56] *Pardo Santos v. Sucn. De Jorge Stella Royo,* 145 DPR 816, 825 (1998).

[57] *García Colón et al v. Sucn. González, supra,* págs. 540-541.

[58] *Íd.,* pág. 543; *Pardo Santos v. Sucn. De Jorge Stella Royo, supra,* pág. 824.

manera inconsistente con el debido procedimiento de ley"[59]. El tribunal tampoco tiene discreción para conceder el relevo, cuando se demuestra la nulidad de la sentencia. Una sentencia nula tiene que dejarse sin efecto, independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado. La discreción que tiene el tribunal para relevar a una parte de los efectos de una sentencia resulta inaplicable cuando es nula. Ante la certeza de que una sentencia es nula, es mandatorio declarar su inexistencia jurídica, independientemente de que la solicitud se haga con posterioridad a haber expirado el plazo de seis meses establecido en la Regla 49.2[60].

No obstante, una moción de relevo al amparo de esta regla no sustituye una moción de reconsideración o un recurso de revisión[61]. No puede usarse "para impugnar cuestiones sustantivas que debieron levantarse antes de la sentencia como defensas afirmativas, o luego de la sentencia en un recurso de revisión"[62].

### III.

Antes de atender la controversia que nos ocupa, debemos puntualizar que, en el presente recurso, se recurre de una orden relacionada a un asunto postsentencia, la cual no se encuentra comprendida entre aquellas determinaciones de naturaleza interlocutoria evaluadas al amparo de la Regla 52.1 de las de Procedimiento Civil, *supra.*

Esbozado lo anterior, debemos evaluar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Así pues, tras examinar el expediente ante nuestra consideración y a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,*

---

[59] *Rivera v. Jaume,* 157 DPR 562, 574 (2002).
[60] *García Colón et al v. Sucn. González, supra,* págs. 543-544.
[61] *Vázquez v. López,* 160 DPR 714, 726 (2003).
[62] *Rivera v. Algarín,* 159 DPR 482, 490 (2003).

determinamos expedir el auto solicitado y revocar el dictamen recurrido. Veamos.

El peticionario adujo que el TPI incidió al denegar el relevo y sostener la sentencia sin haber adquirido jurisdicción, dado que el emplazamiento por edicto fue defectuoso, por incumplir las Reglas 4.6 y 4.7 de las de Procedimiento Civil, *supra.*

Como adelantamos en la exposición del derecho, los requisitos más importantes del emplazamiento por edictos son: (1) la declaración jurada en la que se expresen las diligencias efectuadas para localizar a la persona a ser emplazada; (2) la publicación o diligenciamiento del emplazamiento por edicto dentro de los ciento veinte (120) días luego de ser expedido; y (3) que se le envió a la parte demandada por correo certificado, a su última dirección conocida, dentro de los diez (10) días siguientes a la publicación del edicto, copia de la demanda y del emplazamiento[63]. En cuanto a la declaración jurada, se ha exigido que la misma exponga con precisión las gestiones realizadas, las personas con quienes se investigó y sus direcciones, de forma que el tribunal pueda evaluar si verdaderamente se agotaron todos los recursos razonablemente accesibles para localizar al demandado[64]. Asimismo, nuestro Máximo Foro ha enfatizado que el tribunal deberá tener en cuenta todos los recursos razonablemente accesibles al demandante para intentar hallar al demandado y si se ha agotado toda posibilidad razonable disponible al demandante para poder localizarlo[65].

Examinado el expediente ante nuestra consideración, colegimos que la *Declaración Jurada* suscrita por la emplazadora Dávila Nieves no cumple con las diligencias pertinentes que exige la Regla 4.6 de las de Procedimiento Civil, *supra.* Según se desprende

---

[63] *Banco Popular v. S.L.G. Negrón, supra.*
[64] *Global v. Salaam, supra.*
[65] *Sánchez Ruiz v. Higuera Pérez et al.*, 203 DPR 982, 988–989 (2020).

de la *Declaración Jurada,* la emplazadora Dávila Nieves reconoció haber hablado con un hijo del peticionario, pero no le informó sobre la existencia de la *Demanda,* no le preguntó cuál era la dirección correcta de su padre, no intentó dejar copia del emplazamiento ni de la *Demanda,* ni agotó otras fuentes razonablemente accesibles para corroborar el paradero del señor Vázquez. Como, por ejemplo, personarse a la última dirección conocida del peticionario, la Carretera 173, Km. 9.0, Bo. Sud Rabanal, Bo. Palmasola, Cidra, P.R.

Ahora bien, en la alternativa de que la autorización inicial del edicto hubiese sido procedente, el diligenciamiento posterior incumplió con los requisitos sustantivos de la Regla 4.6 de las de Procedimiento Civil, *supra,* y con la *Orden* emitida por el foro recurrido el 9 de octubre de 2019. Es menester puntualizar que, en dicho mandato, el TPI autorizó el emplazamiento por edicto y requirió el envío por correo de copia de la *Demanda* y del emplazamiento al señor Vázquez. No obstante, el 26 de noviembre de 2019, el recurrido presentó una *Moción Informando Publicación de Edicto y Envío por Correo Certificado a los Demandados* y no acreditó de forma fehaciente haber cumplido con la *Orden* del foro recurrido. Esto, debido a que lo que incluyó el recurrido a su moción fueron copias de alegados recibos de correo certificado que, según se desprende del expediente, no estaban debidamente ponchados por USPS[66]. Por tanto, no colocaban al Tribunal en posición de corroborar que ciertamente el envío se hubiese realizado de forma efectiva.

Es meritorio señalar que el foro recurrido debió celebrar una vista evidenciaria para poder adjudicar credibilidad. Pues, la emplazadora Dávila Nieves arguyó haber realizado ciertas gestiones

---

[66] Surge de la página 6 de la *Moción en Solicitud de Relevo y Nulidad de Sentencia* [...] que del portal del servicio postal (USPS) no se desprende del sistema de rastreo que se pueda localizar el(los) artículo(s) y sugiere que puede ser debido a que: el número es invalido; no se haya recibido el pago; no se haya recibido el artículo; el artículo no incluyó rastreo u otras razones.

para localizar al señor Vázquez, mientras que, el peticionario, mediante prueba jurada, negó haber recibido notificación alguna, así como prueba jurada de terceros afirmando que él era una persona conocida, accesible y visible en la comunidad de Cidra. Resulta evidente que ese conflicto de hechos creó una controversia real sobre el caso de autos, la cual debió dirimirse en una vista para no violar el debido proceso de ley de las partes.

Esbozado lo antes expuesto, bajo el palio de la Regla 49.2 de las de Procedimiento Civil, *supra*, cualquier duda debía resolverse a favor del relevo, no de su denegatoria. Ello es todavía más cierto cuando lo planteado no era un mero error procesal subsanable, sino la nulidad misma de la *Sentencia* por falta de jurisdicción sobre la persona del señor Vázquez y por quebrantamiento del debido proceso de ley.

**IV.**

Por los fundamentos antes expuestos, ***expedimos*** el recurso de epígrafe, ***revocamos*** la *Orden* recurrida, declaramos ha lugar la solicitud de relevo de Sentencia y ordenamos la continuación de los procedimientos conforme a lo aquí dispuesto.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones